The opinion of the Court was delivered by
Bat, J.
To the arguments and authorities adduced on the trial below, I have since given a more attentive consideration; and without going again into the general doctrine of replevin, which I formerly, and on so many occasions since, as well as before, have given to it, I shall confine myself to the exceptions relied upon by the counsel against the motion.
The first exception taken was, that the warrant in that case might be assimilated to that of the commissioners of sewers, when the King’s Bench, it is said, refused to give an order to quash the writ of replevin which had issued for the goods levied on in that case. I have examined the original report of the case referred to in 6 Bac. 56, and find that the warrant of distress, issued by the commissioners of sewers, was for the rates of an assessment on lands in the county of Gloucester, amounting to 41. Is. 6ci., for not repairing a sea wall, which they had caused to be repaired, and for which the adjoining land was chargeable, in which case it might well be considered as a rent charge. *TJpon a motion in .-.¡,, Banco Begis, to quash the replevin which had issued for the goods L' taken by virtue of the warrant, it was doubted whether it should be set aside or not, as it might be considered as a rent charge, in which ease a distress would lay. And, secondly, because it was urged that this assessment had not been made by the Court of Sewers, as authorized by Act of Parliament, but by some of the individual commissioners out of Court, by their own authority. The Court therefore refused to make any order upon the subject, until they had the whole case before them. Pritchard v. Stephens, 6 D. & E. 522. What became of the case finally, the reporters do not inform us. It commenced in doubt, and remains in uncertainty, as far as we are informed ; so that, in fact and in truth, it proves nothing. At all events, however, it appears to me to have no bearing on a case like the one before us. In that case the land was chargeable for the assessment, if it had been regularly made, and distress was the appropriate remedy for nonpayment, as much as for rent in arrear. Whereas, in the present case, the fines were for the neglect of a personal duty, which Mr. Gist was bound to perform ; so that, in my opinion, the cases are in no wise analogous to each other.
The second exception relied upon was, that this proceeding might be considered as one in an inferior Court, in which case it was contended that replevin would lie for goods seized under its authority and jurisdiction. The counsel admitted that an attachment of contempt would lie for issuing a replevin for goods taken in execution, issuing out of a superior Court, but not out of an inferior jurisdiction; and for this purpose, *650 cited 6 Bac. 56, who relies on Gilb. on Replevin, 154. If such a doctrine was once to prevail in South Carolina, and it was held to be the law, I have no hesitation in saying it would soon lay prostrate all the proceedings in all the inferior tribunals of justice in this State. No executions but those of the Court of Chancery and the Court of Common *4611 ^eas *would be secure against this sweeping writ of replevin ; and J that, too, at a time when the parties were upon the point of receiving the fruits of their judgments. All the executions out of the Inferior City Court, those issued by the different corporations for fines and forfeitures, commissioners of the high roads, and all the public bodies in the State, as well as those by magistrates, or by the officers of militia, for fines, &c., would all be paralyzed by the abuse of this writ, upon the principles contended for. For it would only be for the party whose goods are seized under the authority of any of those jurisdictions, to issue his replevin, and get these goods delivered back to him ; and tíren the other party must get them back again the best way he could. At all events, the party thus baffled and disappointed, must go into the Court of Common Pleas, and avow the taking, and show that all the proceedings were regular and agreeable to law ; and even then, the plaintiff in replevin would be entitled to his reply; and every case, after .the lengthy proceedings are made up and issue joined, must go on the docket of Common Pleas, to be tried in regular order, and years would revolve about before these cases could finally be determined on. Thus a scene of confusion and delay would ensue, of which few men can well see the end. Fortunately, however, for the citizens of South Carolina, this is, in my opinion, not the law. I acknowledge that Gilbert has said so, and that Bacon has quoted him to that effect; but neither reason nor justice will bear him out in this position. For I lay it down to be sound law, as well as the wisest policy, to give to every jurisdiction created for the advancement of justice, and the good order and police of the State, all the specified powers and authorities with which they were invested ; and there is no more reason or justice for calling in question, or interrupting their proceedings, while they act within the rules prescribed to them, than there is for calling in question the proceedings of the superior tribunals of justice. If, however, any of them should, at any time, transcend or ^exceed their limits and powers, a prohibition from one of the superior Courts is the appropriate remedy, appointed by law for correcting or preventing any abuse.
It is argued in Pangburn v. Partridge, 7 John. Rep. 142, that this position of Gilbert, “that replevin lies for goods taken in execution from an inferior Court, is clearly erroneous, and that there are numerous cases to the contrary. In this opinion I perfectly coincide ; as the whole current of authorities in the books upon the subject are against it. It will not be denied, but that the supreme authority of Parliament in Great Britain, and of the legislative body in South Carolina, have an unquestionable authority to control the common law ; and even in Acts of Parliament themselves, it is a maxim that leges posteriores priores ábrogant. Admitting, then, for argument sake, that such a principle as the one laid down in Gilbert, even existed as a part of the common law, there can be no doubt but a positive Act of the Legislature would turn the scale *651 against it; and that the statute law, from thenceforward, would become the law of the land.
There are no positive and express decisions or authorities in this country, in favor of the doctrine I am now advocating, because this principle of a replevin laying in these cases, is a thing of yesterday ; one of spurious growth, utterly unknown and unpractised in our country from its earliest institutions. But in England, the eases are numerous, where it has been settled that this writ of replevin will not lie in any case for goods taken in execution, under the authority of an Act of Parliament, or any inferior jurisdiction. In Bradshaw’s case, Temp. 12 W. 3, mentioned in 6 Bac. 55, and also by Cunningham, in his Law Dictionary, it is laid down that wherever an Act of Parliament orders or directs a distress and sale of goods, it is in nature of an execution, and replevin does not lie for them. So it is laid down in 6 Bac. 56, that replevin does not lie for goods seized by a warrant from a justice of the peace, upon a conviction for the destruction of game, under the authority of an Act of Parliament; and that *it would be considered as a contempt to issue it. In the case of Rex v. Oliver, Bunb. 14, on a warrant L of distress for a land tax, a replevin was considered a contempt. And so, in like manner, in the case of The King v. Monkhouse, it was determined that replevin would not lie for goods distrained on a conviction for deer-stealing, under an Act of Parliament, 2 Str. 1184; and that an attachment should go against the under sheriff for serving it.
This brings me, at last, to the patrol law, which is a public Act of South Carolina, under which the warrant for seizing the negro in question was issued, and who has been replevied. This Act may and ought to be considered as one of the safeguards of the people of South Carolina, for the protection of their dwellings and habitations, and for the prevention of the unlawful - assembling of a particular class of our population, and as a security against insurrection; a danger of such a nature, that it never can or ought to be lost sight of in the Southern States. It may justly be considered as a branch of our militia system ; our grand national defence against foreign enemies, and for our internal tranquillity at home. It is easy, therefore, to see that summary and decisive powers ought to be vested in the hands of those who are charged with the execution of this important duty. The Act in question, therefore, has given the necessary powers to the captains of the militia throughout the State ; and has fixed and regulated the fines for all neglects and omissions of duty by those who are by law liable to perform it, and has authorized them to issue their warrants under their hands and seals, to seize and levy upon the goods and chattels of defaulters, to pay a.nd satisfy the fines imposed for this neglect of duty. Here, then, is a plain and positive Act of our Legislature, giving these full and express powers to our captains of the militia; and under the authority of one of them, and by virtue of his warrant, the negro Stephen, belonging to Mr. Gist, was levied on, and in the lawful possession of the officer charged with the execution of *it, when this writ of replevin was issued; which brings this case immediately under the principles of the cases, in which it has been L determined in England, that a writ of replevin will not lie in opposition to an Act of Parliament. I am, therefore, clearly of opinion, that the writ of replevin in this case was not warranted by law, and that it was *652 an illegal interference with the proceedings and the authority given to one of our militia captains by the Act of the Legislature, and that the same should be quashed, or set aside, as null and void ; and further, that the negro Stephen should be delivered back to the military officer, from whom he was taken by the sheriff of Charleston District, in order to raise the fines mentioned in Captain Cole’s warrant.
Toomer, for the motion. Lance, contra.
Colcock, Nott, Richardson, Johnson and Huger, JJ., concurred.
See 8 Rich. 109; Harp. 336; 1 McC. R. 401; 2 MeC. 330.